SARAH WINER, a widow, v. NEW YORK LIFE INSURANCE COMPANY, a New York Corporation.

177 So. 224.
Division B.
Opinion Filed November 19, 1937.

*Rosenhouse & Rosenhouse,* for Appellant;
*Shutts & Bowen* and *E. S. Quick,* for Appellee.

CHAPMAN, J.—The parties will be referred to herein as they appeared in the lower court as plaintiff and defendant. On September 19, 1935, plaintiff filed its bill of complaint in the Circuit Court of Dade County, Florida, against the defendant, who was made beneficiary of a policy of insurance numbered 11,613,449 upon the life of her husband, Edward Winer, for the sum of $2,000.00, and issued under date of November 4, 1931, by the plaintiff. Edward Winer died June 24, 1935. The policy lapsed for the non payment of a quarterly premium on the policy due July 26, 1933. On October 2, 1933, insured made application for reinstatement of the policy and the written questions and answers concerning his health are as follows:

| | |
|---|---|
| "1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this Policy was issued? (*If not, give details.*) | Ans. Yes. |
| "2. Within the past two years have you had any illnesses, diseases or bodily injuries or have you consulted or been treated by any physician or physicians? (*If so, give full details, including nature, date, and duration of each illness, disease or injury, the name of each physician, and the dates of and reasons for consultation or treatment.*) | Ans. No. |

| | |
|---|---|
| "3. Has any Company or Insurer, within the past two years, examined you either on, or in anticipation of, an application for life insurance, or for the reinstatement of life insurance WITHOUT issuing or reinstating such insurance? (*If so, give name of each Company or Insurer.*) | Ans. No. |

It is alleged in the bill of complaint that the aforesaid answers were false and untrue and the language of the bill charging fraud is as follows:

"V. That in truth and in fact the application, Exhibit B hereof, of the said Edward Winer, for the reinstatement of said policy was false and untrue and the representations therein contained were false and untrue, in this, to-wit:

"1. At the time of the making of said application the said Edward Winer was not to the best of his information and belief in the same condition of health as when said policy of insurance was issued to him, in that the said Edward Winer then was and for some time prior thereto had been suffering from hypertensive cardio-vascular renal disease.

"2. The said Edward Winer had, within two years of the making of said application Exhibit B, consulted and been treated by M. P. Boe, a physician, on several occasions, the dates of which said consultations and treatments are unknown to the plaintiff.

"3. The said Edward Winer had, within two years of the making of said application Exhibit B, consulted and been treated by M. H. Tallman, a physician, on several occasions, the dates of which said consultations and treatments are unknown to the plaintiff.

"That the plaintiff did not know and was not advised until July 3, 1935, that the said application Exhibit B of the said insured was false and untrue, or that the representations, or any of them, contained in said application were false and untrue, or that at the time of the making of said application the said insured was not in the same condition of health as he was when said policy of insurance was issued; or that the said insured had within two years prior to the making of said application had any illnesses, diseases or bodily injuries, or consulted or been treated by any physician.

"That the plaintiff would not have reinstated said policy if it had known of the facts concealed by the insured as aforesaid, or if it had known that the representations, or either of them, contained in said application for reinstatement, Exhibit B hereof, were false and untrue, and that by reason thereof the said reinstatement of said policy never became effective, and that said policy lapsed by reason of the failure of the insured to pay the premium due July 26, 1933."

The prayer of the bill of complaint is (a) for a cancellation of the policy; (b) that plaintiff be permanently enjoined from prosecuting any action at law or equity on the policy.

The defendant on December 2, 1935, filed her motion to dismiss the bill of complaint and assigned as the principal ground or reason therefor: "The bill of complaint contained no equity." It is not necessary to recite other grounds of the motion to dismiss for a decision of this case. The lower court overruled or denied defendant's motion to dismiss and from this interlocutory order an appeal was taken and the suit is here for review.

The question for decision here is the forum for the set-

tlement of the issues tendered, whether in law or equity? If as alleged in the bill of complaint fraud was perpetrated by the insured in his application for reinstatement of the policy, certainly it is entitled to its day in court and before the proper tribunal that the issues made may be settled and determined according to law. This court had a similar question before it in the case of Ocean Accident & Guarantee Corp. v. Tucker, 112 Fla. 401, text pages 402-403, 150 Sou. Rep. 606, when Mr. Justice DAVIS, speaking for the Court, said:

"As a general rule equity will not entertain a bill by an insurance company, *after loss,* to cancel the policy and enjoin the bringing of an action thereon, where the bill is founded upon charges of fraud in obtaining the policy which might be availed of by way of defense in an action at law. The Sailors v. Woelfle, 118 Tenn. 755, 102 S. W. Rep. 1109, 12 L. R. A. (N. S.) 881; Mechanics Ins. Co. of Philadelphia v. C. A. Hoover Distilling Co. (97 C. C. A. 400, 8th Circuit), 173 Fed. 888, 32 L. R. A. (N. S.) 940; Bankers Reserve Life Co. v. Omberson, 123 Minn. 285, 143 N. W. Rep. 735, 48 L. R. A. (N. S.) 265. The reason for the rule is that the insurors by issuing the policy of insurance, have entered into a contract with the assured which entitles the latter, after a loss under the policy has occurred, to seek redress in a court of common law, and there submit for judicial determination, all issues of fact between the parties, pursuant to the constitutional right to have a jury trial on all such issues. Drobney v. Lukens Iron & Steel Co., 204 Fed. (C. C. A. 2nd Circuit) 11."

The rule in Ocean Accident & Guarantee Corp. v. Tucker *supra,* was reaffirmed on rehearing in the case of Prudential Ins. Co. v. Prescott, 115 Fla. 365, text p. 377, 156 Sou. Rep. 109, when it was said:

"The holding of Ocean Accident & Guaranty Co., Ltd. v. Tucker, 112 Fla. 401, 150 Sou. Rep. 606, confirms the constitutional right of an insured after loss to have issues of fact arising under insurance policies tried by jury. And only when an insurance company has seasonably denied liability on .its policy within the contestable period and the insured has with notice thereof delayed so long thereafter in bringing a suit at law on the policy that the insurance company is about to lose its right to contest the policy during the contestable period unless it affirmatively proceeds in equity, is an equity suit to avoid the policy *after loss* maintainable."

The bill alleges that immediately after learning of the false representations on the part of Edward Winer made to the plaintiff in his application for reinstatement of the policy on July 26, 1935, it notified the defendant of its non liability and tendered or offered to return the amount of the premium received in connection with the reinstatement of the policy. We see nothing here to preclude the plaintiff from asserting as a defense to an action at law to recover on the policy by the defendant to this suit the false representations· made the basis of this bill of complaint. A similar question was considered in the case of New York Life Ins. Co. v. Kincaid, 122 Fla. 283, text p. 294, 165 Sou. Rep. 353, when it was said:

"Even if he failed to make a full disclosure with reference to his insurability it does not necessarily vitiate his reinstatement. The test is whether or not his answers to the questionnaire were made in good faith and, as said in the preceding paragraph, this question was squarely presented by the pleadings and was for the jury to determine. Their verdict finds ample support in the evidence and should not be disturbed. * * *"

Misrepresentations of insurability material to the risk in an application for reinstatement of a lapsed policy was presented as a defense to an action by the beneficiary on the policy in the case of New York Life Ins. Co. v. Tedder, 113 Fla. 649, 153 Sou. Rep. 145.

In the suit of Florida Life Ins. Co. v. Dillon, 63 Fla. 140, 58 Sou. Rep. 643, was an action at law on an insurance policy and pleas of fraud were tendered as a defense.

Authorities supporting the conclusions of Ocean Accident & Guaranty Co. v. Tucker, *supra,* show:

"A question often arising, and frequently difficult of determination, is whether or not a court of equity will exercise its jurisdiction to cancel a policy after loss or death, and, if so, under what circumstances such recourse may be had. Whether the suit to cancel has been brought before or after loss has been declared by high authority to be the turning point in determining whether equity will entertain jurisdiction, the general rule being that where the action is brought after loss, jurisdiction will not be entertained, unless some special circumstances call therefor, but that if brought before loss, or, in the case of a life policy, before death, jurisdiction will be entertained. Furthermore, if equitable jurisdiction is sought before loss or death, the right of the plaintiff to the aid of the court is greater than it would be were he to wait until after loss or death, when the question might arise whether his remedy by way of defense to an action at law on the policy would not be adequate, and it would be necessary to show that some obstacle prevented making the defense at law. In other words, having no remedy at law before loss, the case presented by a bill brought after loss would have to show, notwithstanding a then existing adequate remedy at law, that a resort to equity was necessitated by some particular circum-

stance of equitable cognizance, warranting equitable relief; and it would seem reasonable to state as a rule, that the fact that the loss has occurred is not conclusive, and upon a proper averment of facts showing that a resort to equity is either necessary, expedient, or proper, or that some obstacle prevents a complete defense at law, the court may, in a reasonable and proper exercise of that discretion which is generally exercised in matters of cancellation, take cognizance and grant relief." Couch, Ins. Par. 1435.

32 Corpus Juris, page 1245-1246, par. 431: "Where a valid contract of insurance has been effectuated, the company cannot cancel the policy without consent of insured, except where it may be permitted to do so by statute or by a reservation in the policy itself. Such a reservation is valid, but, under the general rule, it will be strictly construed against the company. If the company has power to cancel the policy, its motive for doing so is wholly immaterial, and an assessment policy-holder who voluntarily ceases to pay assessments and abandons his policy cannot complain if the company cancels it. The failure of the company to cancel a policy continues its obligation thereunder, and the company may waive, or estop itself from exercising, the privilege of cancellation. * * *

"After the loss occurs the policy cannot be cancelled by the company, even though the company may have no knowledge of the loss. The company may not relieve itself from liability for loss already incurred by inducing insured to receive the policy of another company issued without authority and affording no indemnity."

Black on Rescission and Cancellation, Volume 2, pages 1205-1207, par. 479:

"According to the views prevailing in some of the states, the courts of equity have jurisdiction of an action to com-

pel the surrender and cancellation of a policy of insurance procured by fraud or false representations, at the suit of the insurer, and also to enjoin an action at law therein, although the circumstances alleged would be sufficient to defeat the suit at law if brought. But the general rule in the state courts is otherwise, the theory being that the insurance company, in such a case, has an adequate and complete defense at law in case suit should be brought on the policy, and therefore there is no ground for the interference of equity, unless there may be some special circumstances in the particular case justifying the interposition of a court of chancery. In the federal courts, the rule is now well settled, and turns on the difference in the position of the insurance company before a loss and after a loss. Before a loss has occurred under the policy, and therefore before any possible suit could be brought by the insured, it is ruled that the company has no adequate remedy at law against fraud, false representations, or fraudulent concealments used to procure the issuance of the policy, and therefore a federal court has jurisdiction in equity of a suit for the surrender and cancellation of the policy. But after a loss—as, for instance, by the death of the assured in a life policy—a federal court will not take jurisdiction of a bill in equity to secure the cancellation of the policy for fraud or other such cause, because the insurer has an adequate remedy at law by setting up the fraud in defense to any action which may be brought on the policy. And whereas, to defeat the jurisdiction of equity, there must be an adequate remedy at law in the courts of the same jurisdiction, this exists where the company, being sued in a state court, has the right to remove the case into the federal court on account of diversity of citizenship, and this is none the less so because an attempt to exercise its right of removal

might subject it to a revocation of its license to do business in that state, or at least to litigation to prevent the state authorities from revoking its license. Even in this last case there might be peculiar circumstances which would justify the interference of equity. But a claim to relief in equity cannot be founded on the theory that the insurance company would not have the same control of the case in the character of a defendant which it would have as a plaintiff. * * *"

The facts constituting false and untrue representations made to the plaintiff in the application for reinstatement of the policy in question are not affected by the incontestible clause contained or expressed in the policy. The order appealed from is reversed, with directions to dismiss the bill of complaint.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.