HOBSON, Justice.
This is an appeal by the plaintiff from final decree dismissing its complaint, after hearing on the merits, in a suit growing out of a party wall agreement. The facts and history of the case are briefly as follows:
In 1904 title to the lands of appellant and appellees was vested in one party. In that year, a building was built upon lands now owned by the appellees. In 1912, ’the land now owned by appellant was sold to appellant’s predecessor in title and a party wall agreement was entered by the parties. In the same year appellant’s building was built, except for the west wall thereof, which was the party wall.
This litigation was precipitated when ap-pellees demolished their building, allegedly injuring the party wall so that a hazardous condition existed, in that the wall, being the west wall of appellant’s building, was in. danger' of collapse. The City of Miami notified appellant that the wall was in such condition that under Ordinance No. 3963 it was necessary to demolish it. Later, however, the city caused a careful inspection of the wall to be made and informed- appellant that the wall could be made structurally safe by the addition of columns at each end and a tie beam at the top, tying both columns añd’the' north and south walls together. *782 The letter to appellant, from the City Building Engineering Division, stated that these repairs should be made under the direction of a structural engineer and in accordance with the recommendations of the City Building Engineering Division.
Appellant instituted suit, setting out the party wall agreement, alleging that the appellees had refused to permit appellant to repair the party wall, and seeking permission of the court to enter upon appellees’ premises for the purpose of making the necessary repairs. Appellees answered, admitting the basic allegations of the complaint and that they had refused to permit appellant to enter upon their land and repair the wall, but alleging that the life of the wall had come to an end through decay and age, and that the party wall agreement had, therefore, come to an end as to the existing wall. The answer contained a counterclaim praying the court to decree that the party wall agreement had expired except for that portion permitting the building of a new party wall.
After hearing, the chancellor entered a final decree in which he found, in part, as follows:
“The Plaintiff has obtained from the City of Miami, Florida, a permit to repair the said party wall according to certain plans on record with the City of Miami, Florida.
“There was placed in evidence by the Plaintiff the plans under which the City of Miami issued said permit, which plans required the addition of columns and a tie-beam in accordance with the said notice of the said city. The said party wall, when new, was made entirely of brick. The said columns to be added under said plans of the Plaintiff in evidence are to be constructed with reinforced concrete and the said tie-beam to be added under said plans is to be of concrete. The Building Code or ordinance of the City of Miami prohibits the building of a new building with a wall in the same location as said party wall if said wall be constructed in the same manner and with the same material as shown by the said plans in evidence. The cost of the additions to said party wall under said plans in evidence is in excess of Twenty Percent (20%) of the value of the building of the Plaintiff. An ordinance of the City of Miami prohibits the repair of a building without complying with the Building Code of the City of Miami applicable to new buildings where the cost of such repair is in excess of Twenty Percent (20%) of the value of the building to be repaired.
“The Court finds that under said party wall agreement the Plaintiff acquired the rights to use said party wall for the life of the same, and to repair the same from time to time for the purpose of restoring it or keeping it in the same condition as it originally was, subject only to the police power of the state. The life of said party wall continues so long as it is sufficient within itself to support the building of the Plaintiff. These rights of the Plaintiff were not in any way affected by the Defendants demolishing their building, which they had a right to do. These rights of the Plaintiff, however, do not include the right to make additions to said party wall of materials differing from the material constituting said wall originally, for such a right would enable the Plaintiff and those claiming under it to extend the life of said wall indefinitely, and no such right was granted under said party wall agreement. These rights of the Plaintiff as adjudicated above, do not include the right to take any action which would exclude the Defendants from the use of said party wall, and do not include the right to repair, rebuild, or make additions to such wall in such a manner as would constitute a violation of any Building Code, law, or ordinance legally passed by the proper governing authority,”
*783 Appellant contends that the chancellor’s determination of this case was against the grain of the party wall agreement, and that it therefore cannot stand. Certainly the agreement of the parties is of the utmost importance in a case of this nature, and many if not most of the common law rules pertaining to party walls come into play only in the absence of an agreement covering the point involved. See Orman v. Day, 5 Fla. 385; 69 C.J.S. Party Walls § 7; 40 Am.Jur., Party Walls, Sec. 7. In Nabers v. Wise, 241 Ala. 612, 4 So.2d 149, cited by appellees, common law principles were applied exclusively, but only because the rights and obligations of the parties were not defined by express agreement.
Reviewing the agreement before us in the present case, it is evident that it grants to appellants the “right to use and join to” the existing party wall, all of which was and is located on the property of the appel-lees, the east line of the wall being the dividing line between the two properties. The agreement goes on to provide authority for either party to build a new party wall whose center will be the boundary line between the two properties. As to such wall either party “may rebuild the same in case of a partial or total destruction thereof * * * ” and each shall pay half the value of the construction or rebuilding of this wall. It was this portion of the agreement that the appellees claimed was still effective, and apparently the chancellor agreed.
The last part of the agreement extends “all and singular the covenants conditions and agreements herein set forth” to “the use of the party wall as now constructed * * * ” This appears to authorize the rebuilding of the existing wall in case of a partial or total destruction thereof.
At this point we might be convinced that the chancellor’s disposition of the case was infected with error, were it not for-Ordinance No. 1554 of the City of Miami, combined with certain testimony of record. Although under the party wall agreement appellant might have a right to rebuild the existing wall and charge half the cost to the appellees, plus the right to enter ap-pellees’ lands in the process, this part of the agreement can be made effective only provided it can be done without violating any law, for a provision that the intention of the parties may not be effectuated in violation of law is implicit in every contract. Underwood v. Underwood, Fla., 64 So.2d 281; St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. 438, 441; Fry v. Hawley, 4 Fla. 258, 264.
Ordinance No. 1554 of the City of Miami, as the chancellor found, prohibits the repair of a building without complying with the Building Code for new buildings where the cost of such repair exceeds twenty percent of the value of the building. A qualified real estate appraiser testified for the appellees that the value of appellant’s building is, in round figures, $7,500. The chancellor was entitled to accept this testimony. There is further evidence of record that the repair contemplated by appellant to the wall of the building will cost between $3,500 and $4,000, or about half the value of the building. It is not pretended that the wall, as then constructed, will comply with the Code requirements for new buildings, and there is abundant testimony to the contrary in the record. The engineer who prepared the plans for the appellant’s proposed repair was of the opinion that the work would “not exceed 25% of the structural value of the building,” but apparently' this witness had an idea of the value of the building different from that of the real estate appraiser. With the testimony of the latter as to value, the testimony as to the cost of repairs, and Ordinance No. 1554 before him, the chancellor was authorized to conclude that the repairs proposed by the appellant could not be accomplished without violating the Code, and that upon this record the portion of the party wall agreement upon which appellant relies must fall.
Moreover, we are shown no error in connection with the determination by the *784 chancellor that the party wall agreement did not give appellant the right to build a new wall of different materials from the old on the location of the present wall, and new materials and construction would necessarily be used to comply with the building requirements of the Code as to new construction. It is apparent, however, that the party wall agreement itself contemplates and provides for the erection of a new party wall, but with the center line of such new wall on the boundary line between the two properties. The right to build such a wall under the agreement is preserved to either party by the chancellor’s final decree, and this portion of the agreement continues intact provided the requirements'of the Building Code are also complied with.
Affirmed.
TERRELL, C. J., and DREW, THOR-NAL and O’CONNELL, JJ., concur.