**Robert Leroy DAVIS, Sr., and Reba K. Davis, his wife, individually and as next friend and natural guardians of Robert Leroy Davis, Jr., a minor, Plaintiffs-Appellants,**

v.

**TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut Corporation, Defendant-Appellee.**

No. 85–3870.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1986.

Dearing & Smith, Daniel S. Dearing, Tallahassee, Fla., for plaintiffs-appellants.

A.G. Condon, Jr., Emmanuel, Sheppard & Condon, Robert A. Emmanuel, Pensacola, Fla., for defendant-appellee.

Before GODBOLD and HILL, Circuit Judges, and LYNNE *, Senior District Judge.

HILL, Circuit Judge:

On February 24, 1981, appellants Robert Leroy Davis, Sr. and Robert Leroy Davis, Jr. were severely injured in a collision with a vehicle owned by the City of Port St. Joe, Florida ("the City"). The aforementioned appellants, as well as appellant Reba K. Davis, subsequently filed suit against the City and The Travelers Indemnity Company of America ("Travelers"), the City's insurer, seeking compensation for the injuries sustained in the collision. A verdict of $3,160,000 was rendered in favor of appellants. The present action pertains to alleged conduct engaged in by Travelers during the course of that litigation. This appeal results from a final judgment on the pleadings entered in favor of Travelers. We affirm.

Appellants' initial claim is that certain conduct engaged in by Travelers violates provisions of Florida's Unfair Insurance Trade Practices Act ("UITPA"), giving rise to a breach of statute tort cause of action.[1] Under Florida law, when a statute creates a duty for the benefit of members of the class of persons the statute was designed to protect, a common law cause of action has been held to arise by virtue of an alleged violation of that statute. *Rosenberg v. Ryder Leasing, Inc.,* 168 So.2d 678 (Fla. 3d D.C.A.1964); *Girard Trust Co. v. Tampashores Development Co.,* 95 Fla. 1010, 1015–16, 117 So. 786, 788 (1928). The specific provisions alleged to have been violated here are Fla.Stat. § 626.9541(1)(a) and Fla.Stat. § 626.9541(1)(i). Section 626.9541(1)(a) provides in pertinent part:

> The following are defined as ... unfair or deceptive acts or practices:
>
> (a) MISREPRESENTATIONS AND FALSE ADVERTISING OF INSURANCE POLICIES.—Knowingly making ... or causing to be made ... any ... statement ... which: 1. Misrepresents

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. The complaint provides in pertinent part as follows:

    16. Further, Travelers has violated the Unfair Insurance Trade Practices Act Chapter 626, Florida Statute, Part VII (1980) as follows:

    (a) Travelers has engaged in unfair or deceptive acts or practices in violation of § 626.9541(1)(a) by knowingly making statements to Plaintiffs and its attorneys misrepresenting the benefits, conditions and terms of Travelers policy, to wit: Travelers knowingly stated to Plaintiffs or their attorneys that the terms of the subject policy only provided benefits for bodily injury done to any one person to the extent of $50,000 and for bodily injury done to all persons in the accident on February 24, 1981, to the extent of $100,000, when in fact the policy afforded benefits to the extent of $500,000 as alleged in paragraphs 4 & 5 above, a fact of which Travelers was aware.

    (b) Travelers has engaged in unfair claim settlement practices, in violation of § 626.9541(9)(b) by making material misrepresentations to Plaintiffs as set out in subparagraph (a) above. Plaintiffs have an interest in the proceeds payable under the Travelers policy, and such misrepresentations were made for the purpose and with the intent of effecting settlement of their claims, losses and damages under the policy on less favorable terms than provided in and contemplated by such contract or policy. By misrepresenting to Plaintiffs the amount of coverage afforded under the policy, as set forth in paragraph 16(a), above, for the purpose and with the intent as herein alleged, Travelers engaged in unfair claim settlement practices in violation of Florida law.

    17. The material misrepresentations knowingly made by Travelers, as alleged above, were first made to Plaintiffs shortly after the City's negligent conduct in February, 1981. On numerous occasions through September, 1982, Travelers knowingly misrepresented the extent of its coverage, even after Plaintiffs herein had instituted a civil action against the City of Port St. Joe and Travelers in the United States District Court for the Northern District of Florida, Civil Action No. MCA–82–0207. At no time prior to September, 1982, had Travelers indicated that it would negotiate in good faith for the settlement of any claim for damages resulting from the City's negligent operation of the fire truck. Instead, Travelers had repeatedly stated that the total of all claims which would be paid by Travelers could not exceed $100,000. Travelers knowingly and intentionally misrepresented the extent of its coverage notwithstanding its knowledge of the City's waiver of sovereign immunity to the extent of $500,000. By its conduct, Travelers unjustifiably and unlawfully avoided payment of any sums due under its policy.

the benefits, advantages, conditions or terms of any insurance policy.

\* \* \* \* \* \*

Section 626.9541(1)(i) provides in part:

The following are defined as ... unfair or deceptive acts or practices:

(i) UNFAIR CLAIM SETTLEMENT PRACTICES.—

\* \* \* \* \* \*

2. A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy.

These provisions of the UITPA are designed to illuminate and prohibit a corrupt practice seen to have been engaged in by some liability insurance companies and some of those retained to speak for them. The injured third party seldom knows the contents of the contract between the liability insurance carrier and its insured. The claims representative or counsel, operating by deceit and misrepresentation, can persuade an injured party that the tortfeasor is protected only to a limited extent when in fact the limits of liability are greater than those represented, inducing a deserving plaintiff to settle his valid claim for far less than its real worth. Such conduct is prohibited by UITPA.

The law does not condemn, however, the aggressive defense of an insured. Indeed, the obligation of the insurer to provide a vigorous defense is one of the obligations assumed by the insurer. This obligation contemplates the careful but vigorous assertion of all defenses honorably available to the insured. If there be justiciable or debatable interpretations of law with an interpretation available that would minimize the insured's liability the insurance carrier ought to assert it. Here, the question is whether or not appellants alleged in their complaint that the insurance company lied about the contents of its policy, forbidden conduct, or advocated an interpretation of law which would limit the liability of its insured, conduct required by its contract with its insured. We examine the allegations of the complaint to determine which of these has been alleged and in our examination of the allegations we are not totally blind to the undisputed facts that developed in a subsequent motion for summary judgment.[2]

In paragraph 16 and particularly 16(a) of appellants' complaint there is a bald assertion that Travelers "knowingly misrepresented its coverage." Just that assertion may have been sufficient to allege a violation of Florida law. However, in the remainder of paragraph 16 and in paragraph 17 the complaint elaborates more fully on the exact nature of the misrepresentation asserted. The complaint alleged that the misrepresentation consisted of repeated statements that the total of all claims paid could not exceed $100,000. The complaint further provides that this "knowing misrepresentation" continued after suit was brought against the City and that this misrepresentation continued in spite of the fact that Travelers knew that its insured had waived the Florida sovereign immunity cap to the extent of $500,000 (through the

---

**2.** Our reading of paragraphs 16 and 17 as alleging the assertion of the sovereign immunity defense and not misstatements about the contents of the policy is borne out by the record, which includes appellee's motion for summary judgment, as well as affidavits, counter affidavits, depositions and other supporting material on both sides. This evidentiary material, as well as appellants' opposition to the motion for summary judgment, makes it clear that the gravamen of the appellants' complaint is and always was that Travelers had asserted this limited sovereign immunity defense and not that the contents of the written policy were misrepresented. That too was the assertion made by appellants throughout oral argument. Thus, even if it could be said that a generous reading of paragraphs 16 and 17 in favor of appellants would be that appellants alleged an actual misrepresentation of policy content and coverage, the vacation of a judgment on the pleadings would be futile because it would be necessary to remand and order the entry of a summary judgment in favor of appellee.

purchase of liability insurance with that limit). It is not difficult to understand from the total allegations of these two paragraphs the misrepresentation of which the pleaders speak; Travelers' assertion on behalf of its insured that the insured's status as an incorporated municipality placed it outside the scope of the provision of Florida law that the purchase of liability insurance waives the sovereign immunity statutory cap on liability up to the limits of coverage obtained.[3] This was an available interpretation of Florida case law existing at that time.[4]

The wrong that the UITPA condemns is the company's lying about what its policy provides as to the limits of protection available to its insured. The act nowhere prohibits a liability insurance company from urging a legal theory on behalf of its insured that limits the liability of its insured. Indeed, were there to be an arguable defense of that nature available and the insurance company failed to assert it on behalf of its insured, it would probably be subject to criticism for failure to furnish the defense it contracted to provide when it wrote the policy.

We conclude that the complaint, fully considered, alleged not that Travelers misrepresented policy limits, rather that the insurance carrier "misrepresented" the extent of its insured's liability by urging a defense on behalf of its insured which the appellants contended to be not a good defense under the law. Such conduct is not a violation of the Florida statutory provision at issue here and gives rise to no tort premised upon a breach of statute. Judgment on the pleadings was proper as to the claim.

Even were an action to be predicated on a properly alleged breach of statute tort claim, the holding in *Keehn v. Carolina Casualty Insurance Co.,* 758 F.2d 1522 (11th Cir.1985) would not control. *Keehn* held that (1) the UITPA created no implied private right of action on the statute itself; and (2) no common law breach of contract claim based on alleged violations of the UITPA existed as, in incorporating the UITPA, the insurance contract thus incorporated the UITPA remedy provisions which provided for administrative remedies only for violation of the act. 758 F.2d at 1524–25. A breach of statute tort claim was not at issue in *Keehn.*

■ Appellants next contend that the district court properly dismissed their intentional infliction of emotional distress claim. Appellants seek to ground this claim on the following alleged acts: (1) Travelers' refusal during a period of extreme need on the part of appellants to make reasonable advance payments even though Travelers knew the City was liable in excess of policy limits; (2) Travelers' misrepresentation of the limits of its liability under the policy; (3) Travelers' deliberate delays in payments after acknowledging liability; and (4) Travelers' efforts to lobby against a claims bill appellants introduced in the Florida legislature.

In reviewing this claim, we note the nature of the relationship which existed between appellants and Travelers. Travelers had not undertaken to insure appellants; rather, Travelers had insured the City, the party against whom appellants brought a tort claim. Travelers thus operated under two obligations; to indemnify the City up to the limits of the policy and to defend it against all claims.

■ Here, Travelers was required to defend the City against claims that obviously exceeded policy limits. Payment of policy proceeds did not extinguish the duty to defend. *See* Annot., 27 A.L.R.3d 1057. Thus, Travelers was charged with defending the insured even after making full payment on the policy. In view of this duty, the conduct which appellants allege was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metropolitan Life Insurance Co. v. McCarson,* 467

---

**3.** *See* Fla.Stats. §§ 768.28; 286.28.

**4.** *See Jolly v. Insurance Company of North America,* 331 So.2d 368 (D.C.A.1976).

**1054**

So.2d 277, 278–79 (Fla.1985) (quoting Restatement Second of Torts § 46 (1965)). As a matter of law the facts alleged do not constitute intentional infliction of emotional distress. The district court properly dismissed this claim. The decision of the district court is

AFFIRMED.