VAN NORTWICK, Judge.
Margaret W. Soule, the named beneficiary under a group life and disability insurance policy issued on her deceased husband by appellee, Security Connecticut Life Insurance Company, appeals a final summary judgment determining that she was due $10,-000 in life insurance proceeds rather than the full policy amount of $50,000. We reverse.
Charles Soule was a retired employee of Escambia Treating Company, Inc. (Escam-bia), a subsidiary of International Utility Supply Corp. (IUSC). The insurance policy was issued to the trustees of Participating Employer’s Trust (the policyholder). Es-cambia was a participating employer under the policy.
On March 8, 1991, the insurance administrator for IUSC wrote a letter to Security Connecticut advising that IUSC was being liquidated, that it would have no employees after March 31, 1991, and that the policy should be cancelled as of that date. Charles Soule died on April 10, 1991. When appellant, Mr. Soule’s wife, sought payment of the full $50,000 of benefits under the policy, Security Connecticut tendered only $2,010.34, contending that, because the policy was discontinued as of March 31, 1991, Mrs. Soule was entitled only to the $2,000.00 of coverage to which the decedent had a right to convert under the second paragraph of the conversion privilege contained in section 26 of the policy.[1]
Margaret Soule filed suit contending that the conversion privilege contained in the first *1023 paragraph of section 26 was applicable because the March 8 letter should be construed as terminating her husband’s employment or his eligibility as a member of a class of employees, rather than a termination of the policy, and that, under such provision, he could have converted to a $50,000 individual policy.[2] The trial court disagreed, ruling that the effect of the letter of March 8 was to discontinue the policy as of March 31, 1991, thereby limiting decedent’s conversion rights to those provided by the second paragraph of the section 26 conversion privilege. The court further found that section 627.567(2), Florida Statutes (1985), effectively amended the policy to establish at $10,000 the minimum individual policy to which decedent was entitled to convert and entered judgment for that amount plus interest.
We must respectfully disagree with the trial court’s conclusion that the March 8 letter discontinued the policy effective as of March 31,1991. Under the plain, unambiguous language of section 36 of the policy, which governs both discontinuance of coverage by a participating employer and discontinuance of the policy,[3] neither the policy nor coverage with respect to IUSC could have been discontinued before May 1, 1991, 20 days subsequent to decedent’s death.[4] Under section 36, discontinuance is only permitted as of a premium due date by written notice to the policyholder at least 30 days in advance of the premium due date in the case of the discontinuance of a participating employer, or at least 31 days in advance of the premium due date in the case of the discontinuance of the policy. Payment of premiums under the subject policy were due the first day of each month. Thus, even if the March 8, 1991 letter was valid notice of discontinuance under section 36,[5] discontinuance could not have been effective as of April 1, *1024 1991, because at least 30 days would not have elapsed from the date of the March 8 notice to the April 1 premium payment date. Since the May 1, 1991 premium payment date was the earliest possible effective date of any discontinuance, coverage under the policy was in effect when Charles Soule died on April 10,1991, and Margaret Soule is entitled to recover the policy amount of $50,000 plus any applicable interest.
REVERSED and REMANDED for proceedings consistent with this opinion.
BOOTH and LAWRENCE, JJ., concur.

. Section 26 provides as follows:
PRIVILEGE OF CONVERTING TO AN INDIVIDUAL POLICY. If all of an Employee's life insurance under this policy terminates because of termination of employment, because of retirement or because he ceases to be in a class of Employees eligible for the insurance, or if any portion of an Employee’s life insurance under this policy terminates because of retirement, and if written application is made and the first premium is paid within 31 days after the insurance terminates, the Insurance Company will issue to the Employee, without evidence of insurability, any individual policy of life insurance without disability benefits then customarily issued by the Insurance Company, except term insurance, in an amount not greater than the amount of the Employee's group life insurance which terminates. The new policy will be issued at the Employee’s then attained age, for the premium applicable to the class of risk to which the Employee then belongs and will be effective on the 32nd day after the date his group life insurance terminated.
If an Employee's life insurance terminates because this policy is discontinued or because all life insurance under this policy is discontinued on the class of Employees to which the Employee then belongs, or because this Policy is terminated by either the Trustees or the Company or because his Employer is terminated as a party to the Trust Agreement, and if he has been continuously insured under this policy for at least five years immediately preceding the date his life insurance terminates, and if written application is made and the first premium is paid within 31 days after his insurance terminates, the Insurance Company will issue to the Employee an individual policy of life insurance on the same terms and conditions set forth in the preceding paragraph, except that the amount of the individual policy will not exceed the lesser of (a) the amount of life insurance which terminates less any amount of group life insurance for which the Employee is eligible, or within 31 days becomes eligible, under any group life insurance policy issued or reinstated by the Insurance Company or issued by any other insurer, or (b) $2000.
*1023 If the Employee exercises his privilege of converting to an individual policy, the conversion will be in lieu of all other benefits to which he may be entitled under this policy.
PAYMENT DURING THE 31-DAY CONVERSION PERIOD. If an Employee dies during the 31-day period in which he is entitled to convert his insurance to an individual policy as described above, whether or not application for the individual policy or payment of the first premium has been made, the Insurance Company will pay to the Beneficiary designated under the group policy the amount of group life insurance which the employee was entitled to convert, and no payment will be made under any individual policy that may have been issued.

. In addition, appellant argued that she was entitled to the full $50,000 of coverage because Security Connecticut had recognized the right of three of her deceased husband's fellow retired employees to convert their group coverage to individual policies for amounts in excess of $2,000. She sought recovery below based upon estoppel, waiver, and section 626.951 et seq., Florida Statutes; however, none of these theories provide a basis for recovery given the facts and circumstances of this case. Crown Life Ins. Co. v. McBride, 517 So.2d 660 (Fla.1987); Coira v. Florida Medical Ass'n, Inc., 429 So.2d 23 (Fla. 3d DCA 1983); Unijax, Inc. v. Factory Ins. Assn, 328 So.2d 448 (Fla. 1st DCA), cert. denied, 341 So.2d 1086 (Fla.1976).

. Section 36 provides in pertinent part as follows:
A participating Employer may discontinue coverage with respect to his Employees as of any Premium Due Date by giving the Policyholder written notice of (sic) at least 30 days in advance of that date.
[[Image here]]
This policy may be discontinued by the Policyholder or by the Insurance Company as of any Premium Date by giving the applicable party at least 31 days written notice in advance of that date.

. In fairness to the trial court, we note that appellant concedes that trial counsel did not argue the applicability of section 36 as a separate issue in the proceeding below. However, after a thorough review of the pleadings and the evidence and arguments advanced below, we are satisfied that the issue of the effective date of the discontinuance of the policy, the determination of which is fundamental to an adjudication of the rights of the parties under the policy, was raised below in at least its "broadest sense,” such that it cannot be said that this issue was raised for the first time on appeal. Love v. Hannah, 11 So.2d 39, 43 (Fla.1954).

. Section 40 of the policy provides that participating employers must transact business with the insurance company through the policyholder. Appellant argues that, since Escambia could only transact business through the policyholder, Participating Employer’s Trust, that the letter of March 8, 1991 from IUSC to the insurance company, bypassing the policyholder contrary to the provisions of section 40, is ineffective. We decline to address this issue. Even if Escambia, acting through its parent IUSC, could have discontinued coverage or the policy under section 36, the first possible discontinuance date under *1024 the terms of the policy was May 1, 1991, which was after decedent’s death.